IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | |
| | ) | 2:25-CR-44 |
| AIDAN HARDING, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION

**J. Nicholas Ranjan, United States District Judge**

Aidan Harding moves to suppress evidence against him that the government acquired during a December 2024 search of his residence. ECF 56. Mr. Harding argues that he is entitled to a *Franks* hearing and that the search-warrant application's supporting affidavit lacked the probable cause necessary to search his residence. *Id.* After carefully considering the parties' briefs, arguments, and the relevant law, the Court denies Mr. Harding's motion to suppress (ECF 56) for the reasons below.

## BACKGROUND

A federal grand jury indicted Mr. Harding on February 25, 2025, for possession and attempted possession of material involving the sexual exploitation of a minor in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). ECF 23. The government appeared to stumble upon this crime when it was investigating Mr. Harding for a different crime. Initially, the government was investigating Mr. Harding for the offense under 18 U.S.C. § 875(c), which prohibits certain threatening communications. The government obtained the warrant at issue, and in the course of executing that warrant, came across child pornography on Mr. Harding's devices. (That material was eventually seized by the government pursuant to a later warrant, which is not at issue).

Mr. Harding moves to suppress the initial warrant, essentially arguing that there was not probable cause to support that he was engaging in threatening communications.

By way of background, on October 15, 2024, FBI Pittsburgh received information pursuant to 18 U.S.C. § 2702[1] about Instagram posts and chats transmitted by an account  ("reaper8.8") that the government eventually linked to Mr. Harding.  ECF 56, pp. 36, 51.  Mr. Harding had, allegedly, expressed a desire to "commit an [act of] violence against minorities in furtherance of a [racially motivated] ideology" through comments and messages he transmitted on Instagram.  *Id.*, p. 36. Two months after the government received information about Mr. Harding's social media posts, the FBI submitted a search-warrant application and probable-cause affidavit to conduct a search of Mr. Harding's residence for possible violations of 18 U.S.C. § 875(c).  *Id.*, p. 17.

The search-warrant application and probable-cause affidavit submitted to Magistrate Judge Kelly contain approximately 70 pages of information that the government identified during its investigation.  *Id.*, pp. 36–56.  Much of this evidence consists of excerpts of Mr. Harding's online communications (*i.e.*, posts, comments, and messages transmitted on social media accounts that the government determined were attributable to accounts managed by Mr. Harding).  *Id.*, p. 51.  The affidavit also provides information detailing law enforcement's investigation into a 2019 Terroristic Threats charge brought against Mr. Harding.  *Id.*, pp. 25–26.

Based on the evidence proffered in the affidavit, Judge Kelly issued the search

---

[1] 18 U.S.C. § 2702(b)(7)(A)(ii)–(8) authorizes an electronic communications provider to disclose the contents of messages, posts, comments, etc., to the government if the communications "appear to pertain to the commission of a crime" or "if the provider, in good faith, believes that an emergency involving danger or death or serious physical injury to any person requires disclosure without delay of communications relating to the emergency."

warrant on December 9, 2024.  Two days later, the government executed the search warrant, and ended up finding evidence of child pornography, which, as noted above, was later seized through a different warrant and led to the present indictment.

The tables below provide an overview of the evidence that the government provided in the search warrant's probable-cause affidavit.

**Evidence Proffered in the Search Warrant's Probable-Cause Affidavit: Instagram Posts & Messages (2024)**

| Date & Description | Instagram Posts/Messages | |
|---|---|---|
| April 5, 2024: Mr. Harding posted comments on Instagram group, "Hitlers Supreme Henchmen." | Harding | And no I'd never shoot ya'll. . . None of y'all are Jews |
| On or about August 7, 2024: Mr. Harding shared a video on Instagram of what appears to be Mr. Harding practicing at a shooting range with an apparent rifle-style firearm. | Harding |  |
| August 20, 2024: Mr. Harding exchanged Instagram messages with user sign8of8evil. | Harding | Thank you! I was definitely lost as a kid but I was always on the right track, since birth I was a hardcore nationalist, traditionalist and militarist, took me a while to open my eyes to the international Jewish problem but I fully understand it now, I fight all I can to save my country from them, I also risk my safety and identity being leaked in order to do activism regularly and joined 3 different activist organizations in my area, so I do what I can to |

| | | |
|---|---|---|
| | | help America recover from this degeneracy. |
| | Harding | Hell yea! That's so cool! my birthday is the day after yours, on august 31 I will turn 20. |
| | [Omitted] | [Omitted] |
| | Harding | Yes, that's all we can do, that's why I do activism, to stand up for my people and to show the world who's behind all of our problems, I also spread flyers naming the Jew and what they've done ⚡ I even go into Jew neighborhoods and fly swastika flags and put out antisemitic flyers. |
| On or about August 22, 2024: Mr. Harding referenced his access to firearms. | Harding | I have 22 guns |
| On or about August 26, 2024: Mr. Harding sent messages to sign8of8evil about his interest in mass shootings. | Harding | So the shooters and bombers and shit were cool to me |
| | Harding | Especially the political and revenge driven ones |
| | [Omitted] | [Omitted] |
| | Harding | I wasn't into a lot of true crime though, I thought a few of the serial killers were interesting but my favorite cases are Oklahoma City bombing, pekka the Finnish school shooter, Brendon tarrant, Robert bowers and I thought Jeffrey dahmers case was very disturbing and interesting too |
| | [Omitted] | [Omitted] |
| | Harding | Yea he's disgusting, I just think the case is interesting, and how he disposed of the bodies and shit, and yea the worlds better off without race mixes and faggots [cry/laughing emoji] |
| On or about August 28, 2024: Mr. Harding | Harding | Yea it's terrible but it will be okay, people like us will restore our races place in this world and fight the kike until our last breath |

| exchanged messages with sign8of8evil about a fight between the white race and Jewish community. | sign8of8evil | Victory is ours ⚡ ⚡ [2] |
| On or about September 3, 2024: Mr. Harding exchanged messages with an Instagram user that referenced suicide. | Harding | Real shit bro I'm like half tempted to just commit ngl |
| | [Omitted] | [Omitted] |
| | Harding | I've even looked up different ways to do it and shit that would be less gruesome |
| | [Omitted] | [Omitted] |
| | Harding | Found a whole forum online too with discussion groups where people share ideas |
| On or about September 3, 2024: Mr. Harding shared a post on Instagram that referenced "CTB painlessly without a gun."[3] | Harding | I know most of you won't read this but in case your curious on how to CTB painlessly without a gun |

---

[2] The affiant noted that based on her training and experience, the ⚡ symbol is a symbol that represents "SS," the Schutzstaffel (SS) of Nazi Germany, and is a common white supremacist/neo-Nazi symbol.  ECF 56, p. 38.

[3] The affiant stated in the affidavit that "CTB" has been used as an abbreviation for the phrase "Catch the Bus," which is a figure of speech used to refer to committing suicide. *Id.*, p. 49.



| | Harding | |
|---|---|---|
| On or about September 11, 2024: Mr. Harding posted a video about the Columbine School shooting on his Instagram page. | | |
| September 26, 2024: Mr. Harding shared via Instagram messages images of banners he made to hang from bridges | Harding | Just been making a ton of banners to hang from bridges |
| | [Omitted] | [Omitted] |
| | Harding | |

| | | |
|---|---|---|
| September 28, 2024: Mr. Harding sent an Instagram message to sign8of8evil about his arrest.[4] | Harding | I got arrested today |
| | Harding | Last night* |
| | Harding | I just got out |
| | [Omitted] | [Omitted] |
| | Harding | My buddy had a body cam he was wearing when we all got arrested |
| September 29, 2024: Mr. Harding shared via Instagram messages a video of a banner hanging from a bridge that read, "Fuck Antifa. Swash zog." | Harding |  |
| On or about October 2, 2024: Mr. Harding sent Instagram messages to sign8of8evil stating he might go to jail again. | Harding | [Omitted] |
| On or about October 8, 2024: Harding sent a message to sign8of8evil and expressed suicidal thoughts | Harding | Honestly I kinda just wanna kill myself |
| On or about October 12, 2024: | Harding | I did a big event today in Colorado |

---

[4] These messages refer to Mr. Harding being arrested and charged with criminal mischief by South Park Township Police in September 2024.  ECF 56, p. 39.  He had spray-painted a tunnel with "BETTER DEAD THAN RED PATRIOTFRON."  *Id.*

| Mr. Harding sent an Instagram message to sign8of8evil stating he was in Colorado and visited the Columbine school. | Harding | I got to visit colombine lol |
|---|---|---|

**Evidence Proffered in the Search Warrant's Probable-Cause Affidavit:
Facebook Posts & Messages (2024)**

| Date & Description | Facebook Posts/Messages | |
|---|---|---|
| On or about January 7, 2024 through January 21, 2024: Mr. Harding sent several messages on Facebook to an Individual (Facebook User ID: 100000884417116, "Individual_2") asking to see pictures of "galil," inquiring about shotguns, and showing interest in purchasing a Daniel Defense firearm.[5] | Harding | Can I see a picture of the galil and how much do you want for it |
| | Harding | And what shotguns? And which gauges? |
| | Individual_2 | Will send it all your way tomorrow, the shotguns are all 12 guage though |
| | Individual_2 |  |
| | Individual_2 | Left semi auto 3gun Charles Daly never fired $300<br>Middle panzer arms auto bullpop never fired with added red dot sight $600<br>Right Iwiw galil ace 7.29x39 with red dot fired once. Multiple mags $1200<br>If they are for someone else I would add at least 100 to the Daly and 200 to the others. I know you will take care of them so I will sell to you a little cheaper. Thanks |
| | Harding | Damn unfortunately I'm 19 so I can't buy the |

---

[5] The affidavit describes the references made by Mr. Harding and Individual_2, noting that a "galil" is an Israeli-made rifle and a forced reset trigger is designed to reduce the trigger pull weight or reduce trigger travel for a more rapid subsequent shot after a shooter releases the trigger. The affidavit also notes that Mr. Harding's reference to his "dmm4v7" is a reference to a Daniel Defense AR-15 style firearm with a binary trigger. ECF 56, p. 44.

|  |  | galil, I like the panzer but I don't know much about the mag fed shotguns so I'd have to watch a video or two to make sure its not a jammer, u said it's never been fired too so idk if u know if it runs well or not, It is a 12 gauge? |
|  | Individual_2 | I've never shot it, so I really don't know but you should have your dad buy the galil for you until your 21. [Emoji redacted] it is a 12 gauge. |
|  | Harding | I'll see haha, I'm gonna watch a few videos on the mag fed and I'll get back to you, is that a mock suppressor or a real one, cuz I can't buy anything nfa or 21+ |
|  | Individual_2 | Not a suppressor and the galil is actually a fixed brace pistol not a sbr so no tax stamp. I'm not real big on govt interference but i don't have anything illegal either. The daniel defense I have has a rare breed trigger in it. Pushes the edge but it's legal.<br>My son has a mag fed shotgun, fires well. |
|  | [Omitted] | [Omitted] |
|  | Harding | What kinda trigger is that, I have a binary for my dmm4v7 |
|  | Harding | And what model Daniel defense is it |
|  | Individual_2 | Dd4 mk-12. Trigger is called a rare breed trigger. It's a forced reset trigger..... [The Court assumes the rest of this message was omitted.] |
|  | Harding | Oh shit, if it's forced reset is it legal [emoji omitted]. |
|  | Harding | Not that I give a shit about what my dad told u but I'm hardcore libertarian and I'll put it as "don't like" the government |
|  | Individual_2 | Was legal at the time of purchase and installation. Grandfathered in. |
|  | Harding | Does that still work for transfers and whatnot and would cops give a hard time about it an what not, I'd probably need proof or something I'd imagine wouldn't I? Also how much would u want for it |
|  | Individual_2 | I'm probably not quite there but I think they put their nose in where it doesn't belong. And no you won't get hassled, that is all the state gamelands. The game wardens have seen it show and they don't say a word except it's cool. That one would be $2000 as configured. Has a |

|  |  | Burris 1x6 scope with a secondary red do. Split fore grip for the handgrip and brace, plus the rare breed trigger….. |
|---|---|---|
|  | Harding | Okay, my concern isn't gettin my stoped at the range I'm more worried about if for whatever reason the police seen I had that trigger, would there be legal ramifications or can I prove somehow it's grandfathered on, also would u be interested in selling the lower and if so for how much, I can't afford a 2000$ rifle rn and I have a ddm4 but I'm definitely interested in the trigger/lower |
| On or about January 17, 2024: Mr. Harding posted a video on Facebook that depicted him practicing at a shooting range with an Ithica 37 pump-action shotgun. | Harding | Tested my new ithica 37 the other day (it's 50 years old! And the model is itself was released in 1937!) with my friend Jacob, I may not be the biggest guy but I handled that 12G like a champ! [Emojis omitted].<br><br> |

**Evidence Proffered in the Search Warrant's Probable-Cause Affidavit:
Threema Posts (2024)**

| Date & Description | Threema Posts (Summary) | |
|---|---|---|
| On or about October 17, 2024: Mr. Harding[6] posted a video to Threema in which he described "being a next shooter" | Harding | Made verbal statements about "being a next shooter" and a member of the "Patriot Front" |

**Evidence Proffered in the Search Warrant's Probable-Cause Affidavit:
Interactions with Law Enforcement and Social Media Posts (2017–2019)**

The probable-cause affidavit notes that Mr. Harding was a "known concern" to the Peters Township Police Department since 2017.  ECF 56, p. 50.

For example, in May 2017, the Peters Township School District contacted the Peters Township Police Department about Mr. Harding's notebook, which contained references to homicidal thoughts, Columbine, swastikas, and drawings of weapon designs.  *Id.*  In June 2018, Mr. Harding was recorded on school bus surveillance making threatening statements to another student.  *Id.*

In August 2018, a student reported Mr. Harding for making concerning statements about wanting to steal his uncle's machete and creating a noose to put around Mr. Harding's neck.  *Id.*  In October 2018, Mr. Harding sent two emails to Columbine School District claiming to be a father of two named Jack Benson.  *Id.* The emails referenced the Columbine school shooting and inquired about safety measures that had been put in place to prevent another school shooting.[7]  *Id.*

---

[6] The affidavit notes that the individual who reported Mr. Harding's video knew the account to be associated with an individual named "Aidan" and a telephone number that the government identified as belonging to Mr. Harding.  ECF 56, pp. 47–48.

[7] The affidavit notes that the emails were sent from Mr. Harding's cellular device using email address rebel831804@gmail.com.

Law enforcement interviewed Mr. Harding in April 2019 about his connection to a planned shooting with two individuals he recruited online through Instagram. ECF 56, p. 48. Mr. Harding "discussed plans about acquiring firearms, executing a shooting, and made a statement that Eric and Dylan (known to be the Columbine shooters) were kickstarting a revolution. *Id.* He also said that he was a "prophet or apprentice to finish what the 'gods' started." *Id.*

In April 2019, Mr. Harding communicated with another user on Instagram, (hwhsusiskwnnsdhudjenend) about his plans to conduct a school shooting.

| Date & Description | Instagram Posts/Messages | |
|---|---|---|
| April 2019: Mr. Harding exchanged Facebook messages with another user about his plans for a school-shooting. | Harding | I used to have a plan |
| | Harding | And it was good |
| | Harding | I am very smart I have an iq of 130 which is high so I'm very good at deception and making plans and doing things |
| | Harding | I don't know how they made there bombs I mad mine more stupid because I don't know anything about detonators but I made a different type that is full proof |
| | Harding | And is also a 20 pound propane time bomb |
| | Harding | I also know how to make Molotov's pipe bombs smoke grenades and pull pin pipe bombs and small handheld versions of the propane bomb so basically mini time bombs |
| | Harding | I also had the guns and gear down |
| | Harding | I was deciding if I should go tactical and or dress like them so I'm going with a mix ibetween |
| | Harding | And I would use an ar15 probably a Daniel defense and a glock 19 handgun and a moss berg 14 inch barrel shockwave |
| | Harding | Shot gun |
| | Harding | I had an awesome plan I would have either gon in guns blazing which would be hella easy and high kill count or go in with bombs which probably won't work and it will probably get me killed |

| | Harding | So I was just gonna go in guns blazing |
|---|---|---|
| | [Omitted] | [Omitted] |
| | Harding | But I was gonna do it when I'm like 19 or 21 |
| | Harding | The only thing that was holding me back is a partner |
| | Harding | I wouldn't do it alone |
| | Harding | Or die alone |
| | hwhsusiskwnnsdhudjenend | I'd do it with ya my gf would help us too lol |
| | Harding | Haha hell yeah |
| | [Omitted] | [Omitted] |
| | Harding | But I'm gonna be a good boy for the police so that way I can keep my record straight and then get gnus and leave my mark on the world |
| | hwhsusiskwnnsdhudjenend | YESS |
| | Harding | Teach people that they need to stop bullying |
| | Harding | People always say oh violence doesn't solve anything but when I put a bullet in all the bad peoples heads then there will be no bad in the world |
| | Harding | Eric and Dylan were kickstarting a revolution |
| | Harding | And I am basically a prophet or an apprentice to finish what the gods started |

Mr. Harding seeks suppression of all evidence seized during the government's December 11, 2024, search of his residence, which would presumably include the child-pornography material that forms the basis for the charge against him. The government opposes the motion. ECF 57.

## DISCUSSION & ANALYSIS

Mr. Harding moved to suppress (ECF 56) the evidence seized at his residence by challenging the validity of the FBI and Joint Terrorism Task Force's search warrant executed on December 11, 2024.[8] The warrant authorized agents to search

---

[8] Mr. Harding's motion makes reference to some of his speech being protected under the First Amendment. To the extent that Mr. Harding is suggesting that protected speech cannot be considered for a probable-cause determination, he is wrong. There is nothing prohibiting an affiant from raising concerns that emanate from speech that

for and seize evidence at Mr. Harding's residence related to possible violations of 18 U.S.C. § 875(c), which prohibits the transmission in interstate commerce of "any threat to injure the person of another."

Mr. Harding makes two main arguments: (1) there are material omissions as to the search warrant's probable-cause affidavit, and so Mr. Harding is, at a minimum, entitled to a *Franks* hearing; and (2) regardless of the omissions, the search warrant was unsupported by probable cause.  ECF 56.

As to the first argument, the Court finds that Mr. Harding has failed to meet the required and rather high burden established by *Franks v. Delaware* to obtain a hearing or any ultimate relief.  As to the second argument, the Court finds that Magistrate Judge Kelly had a substantial basis to find probable cause for issuing the search warrant.

### A. A *Franks* hearing is not warranted because the probable-cause affidavit supporting the search warrant does not misstate or omit material facts.

The Fourth Amendment entitles a criminal defendant an opportunity to overcome the presumption of validity of a probable-cause affidavit by proving that (1) the affidavit contained a false statement made knowingly and intentionally, or with reckless disregard for the truth, and (2) once the allegedly false statement is removed, the remainder of the affidavit is insufficient to establish probable cause.  *Franks v. Delaware*, 438 U.S. 154, 156 (1978).

Mr. Harding points to certain alleged material omissions (not any explicit false

---

is protected under the First Amendment as part of the totality of facts presented as part of a warrant application.  And a magistrate judge can consider potentially protected speech as part of a probable-cause determination in issuing a search warrant.  *See New York v. P.J. Video*, Inc., 475 U.S. 868, 875 (1986) (holding that an "application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally.").

statements).  To obtain a *Franks* hearing  due to omissions, a defendant must make a "substantial preliminary showing" that the omissions demonstrated a "reckless disregard for the truth" and the challenged omissions were "essential to the court's finding of probable cause."  *See United States v. Marranca*, 98 F. App'x 179, 182 (3d Cir. 2004).

In *Wilson v. Russo*, the Third Circuit held that "omissions are made with reckless disregard if an officer withholds a fact in his ken that any reasonable person would have known that this was the kind of thing the judge would wish to know." 212 F.3d 781, 788 (3d Cir. 2000) (cleaned up).  "When faced with an affirmative misrepresentation in a warrant application, the court is required to excise the false statement from the affidavit; in contrast, when faced with an omission, the court must remove the falsehood created by an omission by supplying the omitted information to the original affidavit."  *United States v. Yusuf*, 461 F.3d. 374, 384 (3d Cir. 2006) (cleaned up).

Mr. Harding has alleged that the affiant made material omissions.  ECF 56. The Court will therefore consider whether he has made a substantial preliminary showing that these omissions were recklessly made and essential to the probable-cause determination.

### 1. The omission of Mr. Harding's statements made to law enforcement in 2019 and the officer's alleged perceptions are immaterial.

Mr. Harding argues that the affiant failed to include in the probable-cause affidavit material facts related to his 2019 Terroristic Threats charge.  ECF 56, pp. 29–30.  He states that "these omissions vitiate the Affiant's assertions in each of the key paragraphs of the probable-cause affidavit: 46, 47, 43, 44, 33, 34, 18, 19, 20, 17, and 42."  *Id*. These alleged omissions, and the facts that were included in the probable-cause affidavit, are summarized in the chart below.

| Alleged Omissions | Facts Included in Probable-Cause Affidavit |
|---|---|
| When interviewed by law enforcement, Mr. Harding denied homicidal ideation. | **Paragraph 46**: In May 2017, the Peters Township School District contacted the Peters Township Police Department about Mr. Harding's notebook, which contained references to homicidal thoughts, Columbine, swastikas, and drawings of weapon designs. |
| The same police officer who interviewed Mr. Harding was aware that Mr. Harding did [not] have any guns and his statements were "nothing more than an 11-year-old boy being grandiose." | **Paragraph 47**: In June 2018, Mr. Harding was recorded on school bus surveillance making threatening statements to another student. |
| | **Paragraph 43**: In April 2019, law enforcement interviewed Mr. Harding about his connection to a planned shooting with two individuals he recruited online through an Instagram account he created about the Columbine High School shooting. |
| | **Paragraph 44**: In April 2019, Mr. Harding used his Instagram account to communicate with another Instagram user about his plans to conduct a shooting. |
| | **Paragraph 33**: In January 2024, Mr. Harding sent Facebook messages that referenced firearms and asked another user to see pictures of firearms and expressed interest in purchasing a Daniel Defense rifle. |
| | **Paragraph 34**: The firearms that Mr. Harding referred to in the January 2024 Facebook messages were an Israeli-made rifle, known as a Galil.  Mr. Harding also said he owned a Daniel Defense rifle, which is an AR-15 style firearm. |
| | **Paragraph 18**: In August 2024, Mr. Harding posted comments stating, "I'd never shoot ya'll…None of y'all are Jews" in an Instagram group titled "Hitlers |

| | |
|---|---|
| | Supreme Henchmen." |
| | **Paragraph 19**: In August 2024, Mr. Harding described himself via Instagram messages as a nationalist, traditionalist, and militarist, whose eyes had been opened to the "international Jewish problem." |
| | **Paragraph 20**: In August 2024, Mr. Harding referenced a fight between the white race and the Jewish community in Instagram messages. |
| | **Paragraph 17**: In October 2024, FBI Pittsburgh received information regarding Instagram posts and messages made by Mr. Harding that referenced a desire to commit violence against minorities in furtherance of a racially motivated ideology. |
| | **Paragraph 42**: In October 2024, the FBI received information that Mr. Harding posted a video on the Threema application in which he made verbal statements about "being a next shooter," being a member of the Patriot Front, and possessing firearms. |

The Court finds that these alleged omissions are immaterial. Law enforcement cannot "relate the entire history of events leading up to a warrant application." *Wilson v. Russo*, 212 F.3d at 787. The affiant's omission of Mr. Harding's telling a police officer in 2019 that he did not have homicidal ideation, and a police officer's alleged perception that Mr. Harding's actions around the terroristic threat charges were "nothing more than an 11-year-old boy being grandiose" are merely one part of the substantial evidence that the affiant provided in the probable-cause affidavit. ECF 56, p. 13. Any purported falsehood created by these alleged omissions—which, the Court has not found that there are any falsehoods—would not have undermined in any way Judge Kelly's substantial basis for her finding of probable cause. *United States v. Yusuf*, 461 F.3d at 384 (cleaned up); *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) ("the role of a reviewing court is not to decide probable cause *de*

*novo*, but to determine whether the magistrate had a substantial basis for concluding that probable cause existed") (cleaned up).

That is, with respect to Paragraph 46, even if the affiant had mentioned that Mr. Harding denied to law enforcement that he had homicidal ideations, so what? That was simply a suspect's response to law enforcement.  What remained in Paragraph 46 was the fact that Mr. Harding's notebook still referenced the homicidal ideation, along with other indicia of potential violence (*i.e.*, Columbine, swastikas, and drawings of weapon designs).

The same goes for a local police officer's knowledge of Mr. Harding's possession of guns or opinions of the threats.  Had that information been included, it would have done nothing to undermine the affidavit's recounting of ***years*** of incidents of threatening behavior.

In short, Mr. Harding's statements and actions in the time between his 2019 statements to law enforcement and the execution of the search warrant in December 2024 are not negated by the asserted omissions.  Mr. Harding has not made a "substantial preliminary showing" to obtain a *Franks* hearing on the issue, or to obtain any ultimate relief.

> ## 2. The affiant's failure to include the Threema anonymity policy does not undermine the credibility of the informant and the government sufficiently corroborated the information proffered by the informant.

Mr. Harding makes two arguments related to the Threema statements proffered in the search warrant: (1) the affiant's failure to include the Threema App's anonymity policy undermines the credibility of the informant cited in the search warrant affidavit; and (2) the government did not adequately corroborate the phone number.  ECF 56.

To begin with, Threema is an encrypted instant messaging app, which doesn't require users to enter email addresses or phone numbers to create an account.

According to Mr. Harding, Threema has an anonymity policy which basically says as much—*i.e.*, users can simply create an Threema ID and be completely anonymous and avoid being traced. Here, an "informant"—that is, someone who was communicating with Mr. Harding—reported that someone with Mr. Harding's phone number and first name made a threat about "being the next shooter." Mr. Harding argues that omitting the Threema anonymity policy was a material omission, which bore on the credibility of the informant's report. The Court disagrees.

Informants are not presumed to be credible, and the government is generally required to show by the totality of the circumstances either that the informant has provided reliable information in the past or that the information has been corroborated through independent investigation. *See, e.g.*, *United States v. Ritter*, 416 F.3d 256, 263 (3d Cir. 2005) ("Where corroboration or independent investigation after receipt of an anonymous tip is lacking—and thus the predictive value of the tip goes untested before a warrant is issued—courts have found officers' subsequent reliance on the warrant unreasonable."). Here, Threema's anonymity policy has no bearing on the informant's credibility because the informant—and the government—were able to associate the account with Mr. Harding. The affidavit states that the government received information that a Threema app user made verbal statements on video about "being the next shooter." ECF 56, pp. 47–48.

The informant who reported the verbal statements knew the user who made those statements to be associated with an individual named Aidan and a telephone number that was later identified to be Harding's phone number. *Id.* Further, the information from the informant was sufficiently corroborated by an independent investigation in that the phone number of the Threema user alleged to have made those statements matched Mr. Harding's phone number.

Both of Mr. Harding's arguments as to Threema's anonymity policy therefore fail.

### 3. The affiant's omission of portions of Mr. Harding's April 2024 online statements is immaterial.

Mr. Harding alleges that the affiant omitted probative portions of Mr. Harding's online statements.  ECF 56, p. 10.  He argues that the omitted portions were crucial context for understanding the intent and meaning of Mr. Harding's statements, "[a]nd no, I'd never shoot ya'll . . . [n]one of y'all are Jews[.]"  *Id.*  As noted above, the probable-cause affidavit includes extensive excerpts of Mr. Harding's online communications supporting a finding of probable cause that Mr. Harding made threatening communications in violation of federal law.  Further, Mr. Harding does not provide the omitted statements.  He merely suggests that from the omitted statements, it is "clear Mr. Harding is not issuing a threat to anyone in the group with whom he [was] exchanging messages."  *Id.*

The Court finds that any surrounding statements that were omitted, regardless of their content, would not have negated the materiality of the statements that were included in the affidavit, and that Mr. Harding hasn't made a sufficient proffer in any event.  *See United States v. Desu*, 23 F.4th 224, 234 (3d Cir. 2022) ("To obtain a *Franks* hearing, a defendant must establish (1) that a warrant application contained false statements made with reckless disregard for the truth and (2) that the remaining truthful statements, standing alone, do not establish probable cause. The defendant must prove his allegations by a substantial preliminary showing.  To carry his burden, [a Defendant] cannot rest on mere conclusory allegations or a mere desire to cross-examine, but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses.") (cleaned up).

For these reasons, the Court finds that a *Franks* hearing is not warranted.

### b. There was a sufficient basis for Judge Kelly's finding probable cause to grant the search warrant.

Separate and apart from the alleged omissions, Mr. Harding asserts the

following to support his argument that probable cause did not exist to issue the search warrant: (1) the referenced writings in Paragraph 46 of the search warrant affidavit are protected by the psychiatrist-patient privilege; (2) evidence of his disorderly conduct summary offense is irrelevant; (3) some of Mr. Harding's statements were made in the past tense; (4) the affiant offered no evidence that Mr. Harding made "threatening propaganda"; (5) the affiant had no evidence that he had traveled interstate to post or distribute fliers; (6) the affiant did not offer evidence of Mr. Harding issuing explicit or implicit threats to harm any person, group, or community center; and (7) the affiant offered no evidence of Mr. Harding having obtained a forced reset trigger.  ECF 56, pp. 11–12.

On careful review, the Court finds that none of these arguments are sufficient to undermine the existence of probable cause.

The conclusions of a neutral magistrate regarding probable cause are "entitled to a great deal of deference by a reviewing court, and the temptation to second-guess those conclusions should be avoided."  *United States v. Ritter*, 416 F.3d 256, 264 (3d Cir. 2005) (citing *Illinois v. Gates*, 462 U.S. 213, 239 (1983)).  "The role of a reviewing court is not to decide probable cause *de novo*, but to determine whether the magistrate had a substantial basis for concluding that probable cause existed."  *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (cleaned up).  "When presented with an application for a search warrant, the magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Id.* (citing *Gates*, 462 U.S. at 238) (cleaned up).  A magistrate judge may infer probable cause from "the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence]."  *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993) (cleaned up).

This Court finds that Judge Kelly had a substantial basis to find probable cause even if the assertions noted above were absent from the affidavit (*e.g.*, the journal entry). What Mr. Harding attempts to do is to piece-meal attack the probable-cause affidavit. But that is not appropriate. The magistrate judge makes a practical decision based on the totality of all the facts presented. There is no question that the affidavit contains substantial evidence that Mr. Harding committed probable violations of 18 U.S.C. § 875(c), which prohibits the transmission in interstate commerce of "any threat to injure the person of another."

For example, the affidavit includes evidence that Mr. Harding was adjudicated for Terroristic Threats in 2019, had targeted Pittsburgh's Jewish community with swastika flags and antisemitic fliers, had visited Columbine High School, wrote about his plans for a "high kill count" attack, posted about his admiration for Robert Bowers (the individual convicted in the Tree of Life Synagogue shooting), and described himself as "the next shooter." What this means is that even if Mr. Harding is right about all his arguments above and the Court were to discount those referenced paragraphs in the affidavit, there was still ample evidence for Judge Kelly's probable-cause determination.[9]

---

[9] As to Mr. Harden's specific argument that Judge Kelly improperly considered information that would be protected by the psychiatrist-patient privilege, that argument fails. The psychiatrist-patient privilege is testimonial, rather than constitutional, so the protections the privilege affords do not bar a magistrate judge from considering potentially privileged material of this nature when evaluating a search-warrant application. *See Martino v. United States*, No. 24-1404, 2024 WL 3963681, at *3 (3d Cir. Aug. 28, 2024), where petitioner claimed that a smartphone seized by the Government contained text messages he exchanged with his psychotherapist, as well as audio recordings of some of their sessions, and the Third Circuit affirmed the district court's recognition that the patient-psychotherapy privilege is testimonial, not constitutional.

## **CONCLUSION**

For the above reasons, the Court finds that Mr. Harding is not entitled to a *Franks* hearing, finds that the search warrant at issue is supported by sufficient probable cause, and so will deny the motion to suppress.  A separate order follows.


DATE:  November 26, 2025                    BY THE COURT:

                                            /s/ *J. Nicholas Ranjan*
                                            United States District Judge